Filed 12/4/25  In re N.G. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.G. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E085976 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1900158) |
| v. | OPINION |
| V.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Sean P. Crandell, Judge.

Affirmed in part; conditionally reversed in part with directions.

Panda Lynn Kroll, under appointment by the Court of Appeal, for Defendant and

Appellant.

Minh C. Tran, County Counsel, and Catherine E. Rupp, Deputy County Counsel,

for Plaintiff and Respondent.

1

INTRODUCTION

Vanessa C. (Mother) appeals from the juvenile court's order terminating her parental rights to her two sons, N. and J., and her daughter, L. She argues that the Riverside County Department of Public Social Services (DPSS) failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related state law. We conclude that DPSS failed to discharge its duty of initial inquiry as to L.[1] We therefore conditionally reverse the order terminating parental rights to that child only and remand with directions.

FACTUAL BACKGROUND

The subjects of this appeal are Mother's 13-year-old son N., her eight-year-old son J., and her four-year-old daughter L. (together, the children). The children each have different fathers, none of whom is a party to this appeal. In February 2022, DPSS filed dependency petitions for the children pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (g), alleging that Mother's diagnosed but untreated mental health disorders (including bipolar disorder, anxiety, and depression) placed the children at risk of harm, that the fathers' whereabouts were unknown, and that the fathers were unwilling or unable to provide their child with care and support.[2] On the ICWA-010

---

[1] Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

[2] Unlabeled statutory citations refer to the Welfare and Institutions Code.

form attached to the petition, the social worker checked the boxes indicating that she asked Mother about the children's Indian status and that she gave no reason to believe that the children were Indian children. The form also stated that N.'s father denied having any Indian ancestry when he was interviewed in 2019 during a previous dependency proceeding involving N. and J.

In the jurisdiction and disposition report DPSS filed on March 25, 2022, the social worker reported that she was able to locate all three fathers and that each had denied having any Indian ancestry. During his interview, L.'s father, Ernesto, told the social worker that he was currently in treatment for heroin and methamphetamine addiction. On March 30, DPSS filed an amended dependency petition on behalf of the children, adding the allegations that Mother abused marijuana and that Ernesto had a history of abusing controlled substances. The petition also removed the allegations that each of the father's whereabouts were unknown and that Ernesto was unwilling or unable to provide L. with care and support.

In April 2022, the juvenile court sustained the petition's allegations; took jurisdiction over the children pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (g); removed the children from their parents; and ordered family reunification services for Mother and Ernesto.

About a year into the reunification period, on April 11, 2023, Ernesto told the social worker that he " 'might be San Manuel or Yaamava' " because he had learned he was adopted. However, Ernesto was unable to identify any biological family members who were members of a tribe. At the 12-month review hearing in June 2023, the court

3

terminated Ernesto's services and granted continued services to Mother on the condition that she obtain a restraining order protecting her from Ernesto.

On October 3, 2023, the social worker followed up with Ernesto on his claim of possible Indian ancestry. Ernesto said that he "did not know his biological family" because he had been "raised by distant '3rd or 4th cousins.' " He said that he "thinks that he is [n]ative with a local tribe but isn't registered with a tribe." He said that he had "contacted Soboba" and they told him he "needed to go to Palm Springs."

At a review hearing the following month, the maternal grandfather appeared in court for the first time, and the juvenile court asked him whether he had any Indian ancestry. The maternal grandfather denied having any Indian ancestry, at which point Ernesto told the court, "I was going to ask to see if my daughter's Native American. How do I go about that? I need to get tested because I think I got [Indian ancestry] . . . [¶] [o]n my mother's side. My mother's, not father. He's an adopted father." The court asked Ernesto if he knew or had reason to know that any of his children were Indian children, and Ernesto replied, "Yes, I do. My first two children and other daughters, they're native." The court then asked Ernesto what he believed L.'s Indian ancestry to be, and Ernesto said, "Indian from San Manuel, Pala, Pechanga, . . . . [¶] Yaamava, . . . and Cherokee." Ernesto added that he might have Indian ancestry through both his mother's and father's side. He informed the court that his mother was deceased and his father was "doing life in prison." The court asked Ernesto if he had any other information he could provide, and he responded, "No, I don't. I'm waiting to come up with the money to go take a DNA test."

4

The court found that ICWA may apply and told Ernesto, "if the Department reaches out to you for more clarification, they may want to ask some questions about other relatives that could have more information. Make sure that you are responsive to their inquiry." Ernesto agreed and also provided the first and last names of his aunt and his uncle. That same day (November 30, 2023), Ernesto filed an ICWA-020 form in which he stated that his mother and father were members of the San Manuel, Pala, Pechanga, and Cherokee tribes. He also listed, but then crossed out, the Yaamava tribe.

In an addendum report filed on January 12, 2024, the social worker stated that "there is new information to indicate that ICWA may now apply," but the report contained no discussion of any efforts to interview Ernesto's aunt or uncle or obtain additional ancestry information from him. At the 18-month review hearing on January 18, 2024, the court terminated Mother's reunification services and set a section 366.26 hearing for the children. The minute order for that hearing states both that "ICWA does not apply" and that "there is new information to indicate that ICWA may now apply."

In a section 366.26 report filed in April 2024, DPSS recommended that the court find that ICWA did not apply to the children. In the section concerning ICWA, the social worker reported that the court had found ICWA did not apply during the previous dependency proceeding involving N. and J. Although the maternal grandmother had passed away shortly after the jurisdiction and disposition hearing, the social worker reported that the maternal grandmother had denied having Indian ancestry when she was interviewed in August 2020 during the previous dependency proceeding. The social worker also reported that she interviewed N.'s father and the maternal grandfather again

5

(and they again denied ancestry), but she did not mention whether she tried to follow up with Ernesto regarding his claim of possible Indian ancestry. Later in the report, the social worker stated that she had met with Ernesto on six different occasions during the reporting period "to address case plan progress, concurrent planning, and services and needs."

In an addendum report filed in September 2024, the social worker reported that Ernesto had not responded to her text messages "to inquire about Native American Ancestry" from June 5, August 28, and August 29, 2024. The social worker later learned that Ernesto had spent eight days in jail starting on August 14, 2024. In an addendum report filed the following month, the social worker reported that on September 4, 2024, during a phone call with Mother, Ernesto spoke on the phone and gave her his new phone number.

In an addendum report filed in March 2025, the social worker reported that Ernesto had not responded to several text messages that she had sent over the previous six months about scheduling a visit with L. The last time the social worker spoke with Ernesto before the section 366.26 hearing was on April 1, 2025, during a phone call with Mother. The social worker asked him if he wanted to schedule a visit with L., and he replied that he wanted to wait until after the section 366.26 hearing.

The juvenile court held the contested section 366.26 hearing on April 21, 2025. The court terminated Mother's and each father's parental rights to the children, found that the children were likely to be adopted, selected adoption as their permanent plan, and adopted DPSS's recommended finding that ICWA did not apply.

6

Mother argues that the juvenile court erred by finding that ICWA did not apply because it failed to ensure that DPSS complied with the inquiry and notice provisions of ICWA and related state law. Specifically, Mother contends that DPSS's ICWA investigation was inadequate because it failed to (1) interview Ernesto's aunt and uncle and Mother's cousin and great cousin and (2) provide notice to the tribes Ernesto listed in his ICWA-020 form. In a letter brief, DPSS (1) concedes that its initial inquiry as to L. was inadequate because the record contains no evidence that it attempted to interview Ernesto's aunt and uncle and (2) agrees to a conditional reversal and remand for its "omission [to] be remedied." We agree that DPSS's failure to try to interview Ernesto's aunt and uncle rendered the initial investigation as to L. inadequate, but we reject Mother's other claims of error.

"The issue of whether ICWA applies in dependency proceedings turns on whether the minor is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1129.) To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. §§ 1903(4), (8); 224.1, subd. (b)(1).) "The increased protections of ICWA apply 'where the court knows or has reason to know that an Indian child is involved.' " (*Dezi C.*, at p. 1130, citing 25 U.S.C. § 1912(a) & 25 C.F.R. § 23.107(b)(2) (2024).)

"Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1131.) The child

welfare department and the juvenile court have "an affirmative and continuing duty" in every dependency proceeding "to inquire whether [the] child . . . is or may be an Indian child." (§ 224.2, subd. (a).) This " 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*Dezi C.*, at p. 1132.)

Section 224.2, subdivision (b)(2), specifies that once a child is placed into the temporary or protective custody of a child welfare department, the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (See Cal. Rules of Court, rule 5.481(a)(1).) " 'Extended family member' " means "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [adopting ICWA definition of "extended family member"].) "While this duty of inquiry is sometimes referred to as the initial duty of inquiry, this is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132.)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi* C., *supra*, 16 Cal.5th at p. 1134.) In *Dezi C.*, our Supreme Court held that "the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly

8

diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Id.* at p. 1141.)

*Dezi C.* further held that "error resulting in an inadequate initial . . . inquiry requires conditional reversal" because " '[u]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*Id.* at p. 1136.) However, the Court also explained that the child welfare agency does not have to interview "every possible extended family member . . . about the child's Indian ancestry" for the initial inquiry to be sufficient. (*Id.* at p. 1140.)

Applying those principles here, we conclude that DPSS's failure to attempt to interview Ernesto's aunt and uncle rendered its initial inquiry as to L. inadequate. Because DPSS was under an affirmative and continuing duty to determine whether L. is or may be an Indian child, Ernesto's claim that he might have Indian ancestry and his identification of his aunt and uncle as relatives who might know more about that possible ancestry, triggered an obligation on DPSS's part to attempt to interview those relatives. (*In re K.R.* (2018) 20 Cal.App.5th 701, 707.) Although Ernesto was at times unresponsive to DPSS over the course of the dependency proceeding, he was sufficiently

9

available for the social worker to ask him for additional information about his possible native ancestry and for contact information for his relatives. ICWA requires child welfare agencies to "make a meaningful effort to contact specified family members who might have pertinent information." (*In re K.R.*, at p. 707.) And, as DPSS acknowledges, the record contains no evidence that it followed up with Ernesto to ask for his relatives' contact information or that it tried to obtain that information on its own. On remand, DPSS shall make a meaningful effort to ask Ernesto's aunt and uncle whether L. is or may be an Indian child.[3]

The analysis is different, however, for Mother's cousin and great cousin. Mother argues that because the social worker spoke to Mother's cousin early in the dependency about possible placement and had the contact information for Mother's great cousin, they were both "known relatives," and DPSS was therefore required to ask them about the children's possible Indian ancestry. We are not persuaded. DPSS interviewed Mother and every known extended family member on her side of the family (i.e., the maternal grandmother and the maternal grandfather) and all of them denied having any Indian ancestry. Given that the record contains no suggestion that Mother's side of the family has Indian ancestry or that Mother's cousin or great cousin were relatives who might know more about the family's ancestry, we conclude that the juvenile court did not abuse its discretion by determining that the ICWA inquiry as to Mother's side of the family was

---

[3] Regarding that inquiry, we note that it is not clear from the record whether Ernesto claimed Indian ancestry through his adoptive family or his biological family nor can we tell how he is related to the aunt and uncle he identified in court. DPSS may wish to explore those issues in any interviews it is able to conduct on remand.

proper and adequate. As *Dezi C.* observed, a child welfare department is not required to interview "every possible extended family member" about the child's Indian ancestry for the inquiry to be sufficient. (*Dezi* C., *supra*, 16 Cal.5th at p. 1140.) This observation applies with even greater force to relatives, like the two at issue, who do not fall under ICWA's definition of extended family members. (25 U.S.C. § 1903(2) [the term does not include a parent's cousin or great cousin]; see *In re J.F.* (2025) 109 Cal.App.5th 468, 471 [rejecting the child welfare agency's concession that it erred by failing to interview a paternal great-aunt because "[a] great-aunt is not an 'extended family member' for purposes of the mandatory initial inquiry requirements of ICWA"].)

Finally, we reject Mother's claim that DPSS was required to provide notice to each of the tribes that Ernesto identified in his ICWA-020 form—San Manuel, Pala, Pachanga, and the Cherokee tribes. The duty to provide a tribe with notice is triggered when there is "reason to know" an Indian child is involved in the proceeding. (§ 224.3, subds. (a), (b); 25 U.S.C. § 1912(a).) "Reason to know" exists under any of the following circumstances: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know [he

11

or she] is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] and] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).) Ernesto's bare assertion that he might have ancestry with several different tribes, without any additional information about the nature of the ancestral connection, did not create a reason to know that L. is an Indian child. Therefore, the duty to provide notice was not triggered in this case.

DISPOSITION

The order terminating parental rights to N. and J. is affirmed, and the order terminating parental rights to L. is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with the duty of initial inquiry (§ 224.2, subds. (a), (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the tribes (§ 224.3). If the court subsequently determines that DPSS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


RAMIREZ
P. J.


MENETREZ
J.

13